UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| B & C F D O INVESTMENTS #2 LLC ET AL | CASE NO. 6:24-CV-00365 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| REGIONS BANK ET AL | MAGISTRATE JUDGE DAVID J. AYO |

RULING

The present matter before the Court is the Second Motion to Dismiss filed by the defendants, Regions Bank and Regions Financial Corporation [ECF No. 22].[1] The plaintiffs, B & C FDO Investments #2, LLC, B & C FDO Investments #3, LLC, B & C FDO Investments #5, LLC oppose the Motion [ECF No. 24].[2] After considering the parties' filings and the relevant authorities, the Court rules as follows.

I.
BACKGROUND

This case arises out of allegedly fraudulent charges posted to three Regions Bank deposit accounts owned by the B & C Entities.[3] Plaintiffs allege that, on December 20, 2022, Regions Bank's Fraud Department notified them of charges at stores in Florida that had been posted to one or more of their Regions Bank deposit accounts.[4] Plaintiffs contend that these charges were unauthorized and fraudulent.[5] Plaintiffs allege that they notified Regions Bank of additional

---

[1] After Regions Bank and Regions Financial Corporation filed the instant motion, the plaintiffs filed a voluntary motion to dismiss Regions Financial Corporation [ECF No. 26]. That motion was granted [ECF No. 27].
[2] The Court will refer to B & C FDO Investments #2, LLC, B & C FDO Investments #3, LLC, and B & C FDO Investments #5 collectively as the "B & C Entities" or "Plaintiffs." Robert J. Robichaux was formerly a plaintiff but all of his claims were dismissed when the Court granted Regions Bank's first motion to dismiss.
[3] ECF No. 1-1. The complaint identifies a fourth Regions Bank deposit account owned by B & C FDO Investments #4. *Id.* at ¶ 3. However, it appears that this account did not suffer a loss as a result of the fraudulent charges and B & C FDO Investments #4 is not a plaintiff. *Id.* at ¶ 13.
[4] *Id.* at ¶ 4-5.
[5] *Id.*

1

fraudulent charges and transfers on December 21, 2022, and that Regions Bank informed them that "the transfers appeared to be on-going and happening in real time."[6] Plaintiffs were directed to a local Regions Bank branch, where the branch manager, James Harmon, verified that funds were being transferred out of the accounts owned by the B & C Entities.[7] Plaintiffs contend that Robichaux, a member of the B & C Entities, reported that his phone had been "hacked" and forwarded to "a landline in Vienna, Virginia."[8] Plaintiffs allege that Harmon told them that he would report the fraudulent transfers and charges to Regions Bank's Fraud Department.[9] However, according to Plaintiffs, they learned that Harmon and Regions Bank "did not process a request for reversal of the transfers until January 23, 2023, a period of over 30 days."[10] Regions Bank also allegedly failed to submit reversal requests for all of the accounts out of which funds were transferred.[11] Plaintiffs allege that a Regions Bank employee, Alicia Ledet, informed them on February 1, 2023, that Harmon had to submit a "request for return of funds" to the banks receiving the fraudulent transfers as well as "hold-harmless" agreements, but that Harmon had not sent the hold-harmless agreements.[12] Plaintiffs contend that, on February 16, 2023, they talked by phone with a member of Regions Bank's corporate security team, Frank Castillo, and "*again* fully explained the fraudulent transfers;" they then emailed Castillo "a detailed timeline of the events."[13] Plaintiffs contend that, on March 7, 2023, Castillo confirmed that Harmon had not sent the "hold-harmless" agreements even though the banks receiving the fraudulent

---

[6] *Id.* at ¶ 5.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at ¶ 6.
[11] *Id.*
[12] *Id.* at ¶ 9.
[13] *Id.* at ¶ 10 (emphasis in original).

transfers "had requested (but not received) indemnity from [Regions Bank] as early as January 23."[14]

Plaintiffs contend that, on March 7, 2023, they specifically requested information on the transfers from the account owned by B & C FDO Investments #3 LLC, Account No. ***0516. Plaintiffs contend that a total of $291,500 was fraudulently transferred from that account but that, as of March 7th, only $82,986.76 had been refunded to the account.[15] According to Plaintiffs, Castillo had responded by telling him that "the receiving banks had requested indemnity, but 'nothing since then.'"[16] Plaintiffs allege that they were advised to file a formal complaint with the bank regarding the transfers, which they did on March 13, 2023.[17] However, they allege that "[d]espite multitudinous requests, personal meetings and inquiries from the petitioners, neither Mr. Castillo nor Regions Bank nor any other representative has further advised of the status of the original fraud investigation or of the investigation conducted pursuant to" their complaint.[18] Plaintiffs were later informed that Regions Bank had closed the investigation on October 3, 2023.[19]

Plaintiffs filed suit in the 15th Judicial District Court ("JDC"), Lafayette, Louisiana, on February 8, 2024. Plaintiffs' state court petition asserts state-law causes of action negligence, breach of contract, and "legal fault."[20] Specifically, Plaintiffs ground their claims on allegations of alleged wrongdoing, including:

"(a) Allowing unauthorized and fraudulent transfers from Petitioners' Accounts;

---

[14] *Id.* at ¶ 9.
[15] *Id.* at ¶ 11.
[16] *Id.*
[17] *Id.* at ¶ 12.
[18] *Id.*
[19] *Id.*
[20] *Id.* at ¶ 14.

(b) Failure to exercise ordinary care and paying the items, which failure substantially contributed to Petitioners' losses;

(c) Failure to promptly investigate, process and reverse the unauthorized payments and fraudulent transfers from Petitioners' Accounts;

(d) Failure to provide the necessary indemnity agreements to the receiving banks;

(e) Failure to enact and/or enforce reasonable procedures for the investigation, processing and correction of unauthorized payments and fraudulent transfers;

(f) Breach of its statutory and regulatory duties, including failure to provide all regulatory disclosures to petitioners;

(g) Breach of its depository contracts with petitioners;

(h) Failure to act in good faith; and,

(i) Such other fault as may be discovered and proven at trial." [21]

Plaintiffs claim total losses of approximately $113,184.[22] Regions Bank timely removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332 and then filed its first Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court granted the motion in part and denied the motion in part.[23] The Court ruled that the B & C Entities' negligence claims based on the original, allegedly unauthorized transfers had prescribed but that their remaining negligence claims survived. The Court denied the first motion to dismiss with respect to the B & C Entities' breach of contract and "legal fault" claims but ordered that these claims be re-pled. Finally, the Court granted the first motion to dismiss with respect to claims by former plaintiff Robert J Robichaux. The B & C Entities filed an Amended Complaint adding claims under the Gramm-Leach-Bliley Act and the Electronic Funds Transfer

---

[21] *Id.*
[22] *Id.* at ¶ 13.
[23] ECF. No. 18.

Act.[24] Regions Bank then filed the present Motion to Dismiss the Amended Complaint (the "Second Motion to Dismiss").

## II.
## RELEVANT STANDARD

Under Rule 8(a)(2) of the Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, to "survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[25] The facts alleged, taken as true, must state a claim that is plausible on its face.[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."[28]

## III.
## DISCUSSION

**A. Gramm-Leach-Bliley Act Claims.**

Regions Bank first argues that the B & C Entities new claims under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, et seq., must be dismissed because that statute does not provide for a private right of action to remedy violations of the statute. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of

---

[24] ECF No. 20.
[25] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007).
[26] *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011).
[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009).
[28] *Id.* (quoting *Twombly*, 550 U.S. at 554-57).

5

action in favor of that person."[29] Because private rights of action to enforce federal law must be created by Congress, the statute in question must evince a clear Congressional intent to provide a private cause of action.[30] The Court's inquiry thus begins and ends with the text of the relevant statute.

15 U.S.C. § 6801(a) states that "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." Accordingly, § 6801(b) provides that:

> [i]n furtherance of the policy in subsection (a), each agency or authority described in section 6805(a) of this title, other than the Bureau of Consumer Financial Protection, shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards--
>
> (1) to ensure the security and confidentiality of customer records and information;
>
> (2) to protect against any anticipated threats or hazards to the security or integrity of such records; and
>
> (3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.[31]

This general "policy and practice" language "entirely lack[s] the sort of 'rights-creating' language critical to showing the requisite Congressional intent to create new [private] rights."[32] To the contrary, the text of the statute reflects a congressional intent to vest enforcement powers in public regulatory agencies by establishing detailed agency rulemaking requirements and by

---

[29] *Delancey v. City of Austin*, 570 F.3d 590, 592 (5th Cir. 2009)
[30] *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Delancey*, 570 F.3d at 593.
[31] 15 U.S.C. § 6801(b)
[32] *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 703 (5th Cir. 2007).

authorizing the Bureau of Consumer Financial Protection and the Securities and Exchange Commission "to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to their respective jurisdiction."[33] In sum, the B & C Entities cannot assert stand-alone claims for violations of the Gramm-Leach-Bliley Act. Accordingly, the Court grants Regions Bank's Second Motion to Dismiss with respect to these claims. These claims are dismissed with prejudice.

### B. The Electronic Funds Transfer Act Claims.

Regions Bank also challenges the B & C Entities' new claims under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq. The EFTA is a federal consumer protection law that that sets forth "the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." As a threshold issue, the EFTA only applies to certain bank accounts—"consumer accounts."[34] The EFTA defines "consumer" as a "natural person," and an "account" as a "demand deposit, savings deposit, or other asset account ... *established primarily for personal, family, or household purposes*."[35] Accordingly, the EFTA, by definition, does not apply to commercial accounts owned by business entities.[36] Here, the plaintiffs' Regions Bank accounts do not satisfy this definition in two respects. First, the B & C Entities are *business* entities, not natural persons and thus are not "consumers" as defined in the EFTA. Second, the facts alleged by the B & C Entities do not show that these accounts were "established primarily

---

[33] 15 U.S.C. § 6804 (setting forth rulemaking powers).
[34] 15 U.S.C. § 1693a(2) (emphasis added); *see also Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-cv-1160, 2009 WL 1767621 at *3 (S.D.N.Y. June 22, 2009).
[35] *Id.*
[36] *See, e.g., Fischer & Mandell LLP*, No. 09-cv-1160, 2009 WL 1767621 at *3 (noting that EFTA does not apply to accounts used primarily for commercial purposes); *Grainmarket, LLC v. PNC Bank, N.A.*, No. 3:22-CV-2419, 2023 WL 4162278, at *2 (N.D. Tex. June 23, 2023); *Sanders v. Truist Bank*, No. 20-CV-02181, 2021 WL 4185889, at *3–4 (W.D. Tenn. Mar. 31, 2021).

for personal, family, or household purposes."[37] The B & C Entities contend that "courts have recognized that business entities may assert EFTA claims in certain circumstances," such as "when a business entity's accounts are used for both business and personal purposes, or when the line between personal and business use is blurred, courts have allowed business entities to pursue EFTA claims."[38] The B & C Entities, however, cite no case law to support their contention but instead only refer back to the statute even though the text of the statute refutes their argument. If the Regions Bank accounts at issue were used for both business and personal purposes they may qualify as an EFTA "account" *if* they were "established primarily for personal, family, or household purposes." But the B & C Entities' factual allegations support no such inference. Even if they did, the B & C Entities have not cited any case law extending the EFTA's definition of "consumer" to business entities.

Based on the facts pled in the Amended Complaint, the B & C Entities cannot assert an EFTA claim as a matter of law. Accordingly, the Court grants Regions Bank's Second Motion to Dismiss with respect to the B & C Entities' EFTA claims. These claims are dismissed with prejudice.

### C. Contract Claims.

Regions Bank next argues that the B & C Entities have not adequately re-pled their contract claims. The Court previously held that the B & C entities had not stated legally sufficient contract claims because they had not adequately identified the contractual obligations that they claim were breached. The Original Complaint details alleged breaches by Regions Bank, including allowing unauthorized transfers to be made, failing to reverse these transfers, failing

---

[37] 15 U.S.C. § 1693a(2).
[38] ECF No. 24 at 4-5.

to maintain proper safeguards against unauthorized transfers, and failing to take the actions required to recover the funds transferred from the B & C Entities' accounts. The B & C Entities then plead that Regions Bank's actions (or inaction) "[b]reach[ed] its depository contracts with petitioners" as part of a cursory list of numbered claims.[39] This allegation was the only mention of the contract or contracts that the plaintiffs claim were breached.

The Amended Complaint adds additional allegations pertaining to Regions Bank's contractual obligations:

> Regions Bank breached its obligation to provide plaintiff detailed terms and conditions that outline its responsibilities regarding wire transfers, security measures, liability limitations, and fraud protection policies. Defendant failed to update plaintiff's customer agreement since 2001 and failed to even maintain a record of this Agreement.[40]

In connection with their Gramm-Leach-Bliley claims, the B & C Entities also allege that Regions Bank "breached its obligation to establish sufficient safeguards to protect Plaintiffs' accounts from fraudulent wire transfers" and cited alleged "systematic failure in implementing commercially reasonable security measures."[41] The B & C Entities also cite Article 4A of the Uniform Commercial Code.[42]

Even with the additional allegations in the Amended Complaint, the B & C Entities' contract allegations are sparse and do not identify and describe the specific contractual provisions that they allege were breached—other than the general reference to their "depository

---

[39] ECF No. 1-1 at ¶ 14(g).
[40] ECF No. 20 at ¶ 12d.
[41] *Id.* at ¶ 12a.
[42] This passing reference to UCC Article 4A is curious. Article 4A addresses electronic funds transfers and has been adopted in Louisiana at La. R.S. § 10:4A-101 et seq. The B & C Entities do not cite any specific provisions of Article 4A that are applicable to their case. However, some courts have held that certain provisions of Article 4A preempt some categories of negligence and contract claims. *See, e.g., Beck v. Metro. Bank Holding Corp.*, 747 F. Supp. 3d 442, 459–60 (E.D.N.Y. 2024). Because the parties have not addressed the effect of Article 4A (if any) on the B & C Entities' claims, the Court will not address Article 4A in connection with the instant motion.

contracts with [Regions Bank]" in the Original Complaint. However, reading the allegations as a whole and taking the facts pled as true, the Court can reasonably infer that the B & C Entities allege that their deposit agreements with Regions Bank include provisions governing their rights and obligations with respect to unauthorized wire transfers, account security, and maintenance of account documents, and that Regions Bank's alleged actions (or inactions) cited in the Original and Amended Complaint breached those obligations. In sum, these allegations are sufficient to state a claim for breach of contract at this stage of the litigation.[43] The Second Motion to Dismiss is denied with respect to the contract claims.

### D. Claims for "Legal Fault."

Regions Bank next argues that the B & C Entities' Amended Complaint does not cure the pleading defects in their claims for "legal fault." As the Court explained in the Memorandum Ruling addressing the first motion to dismiss, it appears that the B & C Entities are basing these claims on their allegations that: (1) Regions Bank breached "its statutory and regulatory duties, including failure to provide all regulatory disclosures to plaintiffs;" (2) Regions Bank "[f]ail[ed] to act in good faith;" and (3) Regions Bank is responsible for "such other fault as may be discovered and proven at trial."[44] The Court concluded that these allegations did not provide Regions Bank with fair notice of the claims the B & C Entities are asserting, nor did they include sufficient facts to show the B & C Entities' entitlement to relief for "legal fault" and thus did not

---

[43] Of course, the plaintiffs have the ultimate burden to prove the elements of a contract claim under Louisiana law— that (1) the parties consented to be bound through offer and acceptance; (2) the obligor breached the contract by failing to perform an agreed obligation; and (3) the obligee incurred damages as a result. *84 Lumber Co. v. F.H. Paschen*, 2017 WL 3425955, at *2 (E.D. La. Aug. 8, 2017); *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC*, 193 So.3d 1110, 1115 (La. 2015). The existence of the contract and its terms must be proven by a preponderance of the evidence, either direct or circumstantial. *Sullivan v. City of Baton Rouge*, 2014–0964 (La.App. 1 Cir. 1/27/15), 170 So.3d 186, 202. Whether the B & C Entities can create a triable issue as to all of the essential elements of their contract claims is a question best decided in connection with a motion for summary judgment after a reasonable opportunity for discovery.

[44] ECF No. 1-1 at ¶ 14(f),(h), and (i).

satisfy Rule 8(a)(2) or *Twombly*. The Court granted the B & C Entities leave to amend to cure these pleading defects but the Amended Complaint does not allege facts sufficient to overcome these defects. The B & C Entities' "legal fault" allegations do not appear to assert "stand-alone" claims for relief under Louisiana or Federal law; rather they are largely duplicative of their negligence and breach of contract claims. Because the B & C Entities' "legal fault" allegations do not support stand-alone claims for relief, the Court grants the Motion to Dismiss with respect to these claims. These claims are dismissed with prejudice.

### IV.
### CONCLUSION

For the reasons explained above, the Court GRANTS in part and DENIES in part Regions Bank's Second Motion to Dismiss under Rule 12(b)(6) [ECF No. 22]. The Court GRANTS the Second Motion to Dismiss with respect to the B & C Entities' claims under the Gramm-Leach-Bliley Act and the EFTA. These claims are DISMISSED WITH PREJUDICE. The Court also grants the Second Motion to Dismiss with respect to the B & C Entities' claims for "legal fault." These claims are also DISMISSED WITH PREJUDICE. In all other respects the Second Motion to Dismiss is DENIED.

THUS DONE in Chambers on this 7th day of August, 2025.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE